UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-14281-CIV-MARTINEZ/MAYNARD

JUDY GUDGER AND RHONDA KING,
On behalf of themselves and similarly situated others,

    Plaintiffs,

v.

CENTENE MANAGEMENT CO., LLC
AND SUNSHINE STATE HEALTH PLAN, INC.,

    Defendants.
_____/



## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO CONDITIONALLLY CERTIFY COLLECTIVE ACTION (DE 40) AND ON DEFENDANTS' MOTION TO STRIKE (DE 45)

**THIS CAUSE** comes before this Court upon the above Motions. Having reviewed the Motions and their respective Responses and Replies, this Court recommends as follows:

### BACKGROUND

1.    The Defendants have a contract with the State of Florida to provide managed health services to Florida residents. One such managed health service is Medicaid's Long-Term Care Program. It is directed to low-income, disabled, or elderly residents and to the otherwise un- or under-insured. The program provides supportive services through personal care assistants, nurses, etc., whether they live at home or in a nursing home. The Defendants have employees who work as case managers and whose duties are to determine eligibility, to develop care

plans, to coordinate care and refer participants to the service providers, and to resolve complaints as they arise.

2. The two named Plaintiffs and the nine opt-in plaintiffs worked for the Defendants performing those case management duties under the job title of "Long-Term Care Case Managers" or "LTC-CM". Plaintiff Rhonda King was the first to have that position (starting September 2007), and Opt-In Plaintiff Celeste Busbee was the most recent (starting in December 2014). The Plaintiffs say that they later worked as "Medical Necessity Specialists/Nursing Home Transition Specialists". The Defendants dispute ever having a job position called "Nursing Home Transition Specialist". For present purposes, however, this Court will use the job title as the Plaintiffs call it, and abbreviate it as "MNS/NHTS". Plaintiff Jody Gudger was the first to assume the job of MNS/NHTS (in November 2014) while the others assumed it over the course of 2015. Thereafter the Plaintiffs all worked as MNS/NHT-Specialists until February 2017. They allege that their job duties have remained the same despite the above title and/or position changes.

3. The Defendants classified both positions as FLSA-exempt and consequently did not compensate the Plaintiffs extra for the hours that they worked overtime. Instead the Defendants

paid them a fixed salary regardless of the number of hours they worked.

4. During the period of time when the Plaintiffs were working as MNS/NHT-Specialists, other employees began suing the Defendants to recover unpaid overtime compensation. In March 2015 some employees who worked as "Talent Acquisition Specialists" and "Recruiters" challenged the Defendants' designation of their positions as FLSA-exempt independent contractors. See Reed-Murray v. Centene Corp., 2015 WL 9255552 (N.D.Ga. 2015). In May 2015 a Long Term Care Case Manager employee sued the Defendants challenging the exempt status of the LTC-CM position. See Robertson v. Centene Management Co., LLC, Case No. 15-86-CV-MW/GRJ (N.D.Fla.). In July 2016 the Defendants reclassified the LTC-CM position as non-exempt (and thereby subject to overtime compensation), and they renamed it "Long Term Care---Coordinator I". This change does not appear to have affected the Plaintiffs. In October 2016 another employee sued the Defendants in the Northern District of Florida also challenging the exempt status of the LTC-CM position. See Veit v. Centene Management Co., LLC, Case No. 27-6-CIV-MW/CAS (N.D.Fla.).

5. In February 2017 the Defendants changed the name of the MNS/NHTS position to "Long Term Care Coordinator II". Along

with that change of title name, the Defendants also reclassified the position to non-exempt status. In other words the Defendants began paying overtime compensation to those employees holding that position title. This change did affect the Plaintiffs. In February 2017 the Defendants converted them to "Long Term Care Coordinator II" and started paying them overtime.

6. In July 2017 an employee sued the Defendants to recover overtime compensation that she did not receive as a "Case Manager" during the time frame of July 2014 to November 2016. The Defendant had classified the job as FLSA-exempt. That case settled. See Matador v. Centene Management Co., LLC, 2018 WL 889435 (M.D.Fla. 2018). It appears that neither the Veit nor Matador cases entered the collective certification stage. It appears that the Robertson case was the only one certified conditionally as a collective lawsuit.

7. The two Plaintiffs named here---Jody Gudger and Rhonda King---seek leave of Court to form a collective group of similarly situated employee-plaintiffs. They propose a group defined as all salaried employees who worked for the Defendants anywhere in Florida from August 7, 2014 to the present; who had the positions of "Case Manager, Long Term Care", "Nursing Home Transition Specialist", or "Medical Necessity Specialist"; and whom the Defendants did not pay overtime compensation for the

overtime hours they worked because the Defendants misclassified their position as FLSA-exempt. The Defendants oppose the collective's certification for many reasons.

## DISCUSSION

8. Title 29 U.S.C. § 216(b) permits "any one or more employees" to sue their employer to recover for the employer's FLSA violations "for and in behalf of himself or themselves and other employees similarly situated." This is the collective that the named Plaintiffs, Ms. Gudger and Ms. King, seek to create. This proposed group of aggrieved litigants is not a class action that exists as its own entity, however. The only way an aggrieved employee may join this lawsuit as a plaintiff and be bound by it is by affirmatively opting in. The statute requires: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Consequently the essential nature of the Plaintiffs' present request is to spread the word about their lawsuit and to instruct others how to join it. "The sole consequence of conditional certification is the sending of court-approved written notice to employees who in turn become parties to [the] collective action only by filing written consent with the court." Mickles v. Country Club, Inc., 887 F.3d 1270, 1277 (11th

Cir. 2018). See also, Guerra v. Big Johnson Concrete Pumping, Inc., 2006 WL 2290512 (S.D.Fla. 2006).

### Entitlement

9. The first question this Court must answer is whether the Plaintiffs meet the standard for creating an opt-in collective. Generally speaking, the Plaintiffs must demonstrate (1) other employees whose situation is "similarly situated" to theirs and (2) sufficient interest amongst them to join this lawsuit. The Plaintiffs' burden of persuasion also must be kept in mind. The Plaintiffs seek---and this Court sees no reason to deviate from---the two-stage approach for creating an opt-in collective. Presently this case sits at the first stage---the notice stage---and at this first "notice" stage, the similarity standard that the Plaintiffs must meet is a lenient one. The scope of review is limited to the pleadings and proffered affidavits, and it typically ends in the collective being certified on a conditional basis, from where it progresses to the second stage. See Mickles, 887 F.3d at 1276.

10. The burden of persuasion is far less than what would be needed for joinder or class action formation. To the contrary, the Plaintiffs need only show "a reasonable basis" to support their claim that other similarly situated employees exist. Something more than just counsel's own unsupported

assertions of widespread FLSA violations may suffice. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260–61 (11th Cir. 2008) and Reyes v. AT&T Corp., 801 F.Supp.2d 1350 (S.D.Fla. 2011) (discussing generally the standard for determining whether to certify a collective conditionally).

11.  This Court begins its "similarly situated" inquiry with the nature of the FLSA violation alleged. They allege a common pay scheme by which the Defendants misclassified the subject job titles as FLSA-exempt for the purpose of avoiding overtime compensation. This Court observes in neither their Amended Complaint nor in the instant Motion do the Plaintiffs specify why the FLSA-exempt classification was wrong. The Plaintiffs do not say what it is about their jobs that require overtime compensation. This Court assumes that the Plaintiffs mean the misapplication of the administrative exemption of 28 U.S.C. § 213(a)(1) and 20 C.F.R. § 541.100 and § 541.200. See generally, Adams v. BSI Mgmt. Sys. Am., Inc., 523 Fed.Appx. 658 (11th Cir. 2013). See also, Allen v. Hartford Fire Ins. Co., 2017 WL 3701139 (M.D.Fla. 2017) (discussing the bona fide administrative employee exemption in the context of an insurer's "analyst" employees who process disability claims). In any event this Court does not find this omission to persuade against

granting the Motion. For one the Defendants raise no such objection.

12.   What the Defendants do argue is that the job duties of each of their LTC-CM and MNS/NHTS employees are too varied and individualized to lend themselves to being litigated in this one lawsuit. The Defendants' argument is better suited for the second, decertification stage or on the merits. For that same reason this Court denies the Motion to Strike (DE 45) that the Defendants file in response to the Plaintiffs' Motion to Conditionally Certify Collective Action.

13.   For present purposes the Plaintiffs demonstrate a sufficient degree of similarity. Not only do each of the Plaintiffs attest to having the same or similar job duties, but this Court also finds persuasive that the Defendants gave them all the same job title (initially LTC-CM), changed their job titles (from LTC-CM to MNS/NHTS) in the same time frame, and then changed their job title yet again (to LTC-Coordinator II) in February 2017, this time with an FLSA classification change, too. That history contradicts the Defendants' various arguments. For one it shows the MSN position to be greater in number and more generalized than how the Defendants characterize it. More importantly, though, the fact that the Plaintiffs generally shared the same titles and underwent the same title changes in

similar time frames seems inconsistent with the Defendants' characterization of either position as highly individualized under varied work conditions. Also important is the fact that the title change brought about an exemption classification change without any discernable change in the job's duties. That is essentially the Plaintiffs' allegation: that the Defendants created job titles, deemed those job titles as FLSA-exempt, and assigned them those job titles as a company-wide compensation scheme created at the administrative level. While the Defendants highlight differences in each Plaintiff's respective job duties, they make no such argument that pay and compensation decisions likewise were made at the individual employee or even regional levels.

    14. Next the Defendants object to the geographic scope of the proposed collective. The Plaintiffs seek to encompass the whole state of Florida. Only three Plaintiffs---the named Plaintiff Jody Gudger and two Opt-In Plaintiffs---work within the Southern District of Florida (at Sunrise, Florida). The rest work in Jacksonville except for one who works in Tampa. This Court finds sufficient, if only minimally so, to establish the potential that there similarly situated employees outside of this Court's local area who are interested in joining this lawsuit. However this Court sees no such evidence for the entire

State of Florida. This Court limits the collective to those who work within the Southern and Middle Districts of Florida. This Court thereby excludes those who work in the Northern District of Florida.

15.  This Court does not find the fact the Defendants' LTC-CM employees already may have received notice of the earlier filed Robertson case to dissuade against sending notice of this litigation. The Defendants cite no binding legal authority that sets forth such a per se bar. This Court notes the general nature of an opt-in group of litigants. Prior litigation does not estop an aggrieved employee if s/he did not affirmatively join in. See Allen, 2017 WL 3701139 at *3. Nor does this Court perceive here a situation where the circumstances might lessen the Plaintiffs' ability to demonstrate lack of interest or lack of need for repeat notification. This Court sees no circumstance here that overcomes sending out notice of this particular case.

16.  This Court therefore finds sufficient similarity to certify the collective at least on a conditional basis for purposes of sending out notice. Other courts that have considered similar types of jobs have done so as well. See Allen, supra, Williams v. Coventry Health Care of Fla., Inc., 2016 WL 7013530 (M.D.Fla. 2016), Javier v. Social Service Coordinators, Inc., 2014 WL 12531532 (S.D.Fla. 2014), and Joseph

v. Family Preservation Services of Fla., Inc., 2011 WL 1790167 (S.D.Fla. 2011). See also, Malamphy v. Abundant Life Home Health Agency, Inc., 2016 WL 9185403 (M.D.Fla. 2016). Compare Poggi v. Humana at Home 1, Inc., 2017 WL 4877431 (M.D.Fla. 2017) (finding the nature of that employer's productivity scheme to render the employees' overtime claims too individualized to be litigated together). This Court also accepts the collective's definition to be sufficient including the time frame going back to August 7, 2014 (three years before this lawsuit began). (The extent to which the two-tier statute of limitations affects their claims for relief will have to be decided at a later stage of litigation.) The only restriction that this Court imposes on the definition is its geographical scope (excluding the Northern District of Florida). The Defendants shall give Plaintiffs' counsel contact information for all employees, whether former or current, who meet this definition.

### Notice

17. Having found a sufficient basis to certify on a conditional basis the Plaintiffs' proposed collective and to notify the potential members of this litigation, this Court considers next the form and means of that notice. The law permits conditional certification and notice to potential collective members. This in turn requires an accurate, timely,

and informative notification process. See Allen, supra, at *10. The above-cited decisions are helpful guides, and the Notice that the Defendants propose at DE 43–1 and the modifications that this Court makes here further that goal.

18.  First, as to the Notice's contents, the Notice may inform the potential members that the Defendants dispute the Plaintiffs' FLSA allegation and that the Court has not decided the case yet. This Court adds that the Notice shall inform the recipients that they may join this litigation if they worked as a Long Term Care Case Manager at any point during the time frame of three years before the date of the Notice [expressed as the specific date as calculated at the time of notice] through July 17, 2016 and/or as a Medical Necessity Specialist/Nursing Home Transition Specialist at any point during the time frame of three years before the date of the Notice [expressed as the specific date as calculated at the time of notice] through February 25, 2017. The Notice shall add the general advisory that the Court may decide at a later time to limit an employee's recovery to a two year time frame depending on how the statute of limitations question is resolved.

19.  Second, as to the means of dissemination, this Court finds Plaintiff's counsel entitled to know each of the potential member's name, last known mailing address, and telephone number.

Plaintiff's counsel will be the one to send out the Notices to them. This Court is not requiring email addresses because this Court presumes the Defendants to have accurate mailing addresses and telephone numbers. Nor does this Court require the Notice to be posted in the workplace since this Court discerns no indication of common workplace gathering areas. This Court does remind the Defendants that while Plaintiffs' counsel will be the one to disseminate the Notices, the Notice, itself, is the Court's. The Defendants must give Plaintiffs' counsel accurate contact information for all employees within the scope of the definition and resolve any doubts in favor of disclosure. The failure to give accurate and complete information may justify the use of alternative means of dissemination and may require the Defendants to justify the resulting notification delay.

20.  Thirdly this Court suggests the following time line for carrying out the notification process. Because the date of the Notice's issuance will affect the statute of limitations, time is of the essence. This Court recommends that the parties be given fourteen business days to draft a mutually agreeable Notice and for the Defendants to provide Plaintiffs' counsel with a complete list of potential collective members' names and contact information. For those recipients who wish to join this lawsuit, the Notice shall tell them that they have one month

from the Notice's date to submit their forms to Plaintiffs' counsel. The Notice shall express that deadline as a specific date. Lastly this Court recommends that the Plaintiffs be given fourteen business days after that deadline to file the opt-in forms into the case docket. The Plaintiffs then shall file a notice with this Court to inform it when that last deadline has been reached and the notification process has concluded. In that notice the parties also shall propose a deadline when the Defendants shall file any decertification motion for purposes of stage two of the proceeding.

**ACCORDINGLY,** this Court recommends to the District Court that the Plaintiffs' Motion to Conditionally Certify Collective Action (DE 40) be **GRANTED** consistent with the above instructions. This Court recommends that the Defendants' Motion to Strike (DE 45) be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case. Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the

factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 749–50 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 21st day of May, 2018.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE