**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

| | | |
|---|---|---|
| JODY GUDGER AND RHONDA KING, on behalf of themselves and those similarly situated, | ) ) ) ) | |
| Plaintiff | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 2:17-cv-14281-JEM |
| CENTENE MANAGEMENT COMPANY, LLC, a Foreign Limited Liability Company, and SUNSHINE STATE HEALTH PLAN, INC., Florida Profit Corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**JOINT MOTION AND BRIEF IN SUPPORT OF**
**APPROVAL OF SETTLEMENT**

The parties move the Court for an order approving the settlement agreement proposed by the parties.  The reasons and bases for approval are set forth below in the supporting memorandum.

WHEREFORE, the parties request that the Court:

a.  Find that the proposed settlement, including the settlement amounts to the Opt-In Plaintiffs, the service payments to Plaintiffs Gudger and King, the attorney's fees and costs, and all other terms of the parties' Settlement Agreement, is fair and reasonable, and

b.  Enter a final order approving the proposed settlement, including the settlement amounts to the Opt-In Plaintiffs, the service payments to Plaintiffs Gudger and King in the amount of $10,000.00 each ($20,000.00 total for both Named Plaintiffs), the Plaintiffs' attorney's fees and costs in the amount of

$179,221.44, and all other terms of the parties' Settlement Agreement, and dismissing the case with prejudice.

## MEMORANDUM OF LAW

### I.       The Nature of the Case and Case History.

Plaintiff Gudger, individually and on behalf of similarly situated employees of the Defendants, filed her Complaint on August 7, 2017 (ECF No. 1), and Plaintiff King joined her, and, an Amended Complaint was filed on February 2, 2018 (ECF No. 36).  Plaintiffs alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., based on the Defendants exempting them and other Long Term Care (LTC) Case Managers and Medical Necessity Specialists (MNS) employed by the Defendants from the overtime provisions of the FLSA.  The Defendants filed an Answer denying the allegations in the Amended Complaint on March 2, 2018.  (ECF No. 37).

Plaintiffs filed a motion for conditional certification, seeking to represent and send notice to a collective of LTC Case Managers and Medical Necessity Specialists who were employed by the Defendants in the State of Florida during the time period starting three years prior to the filing of Plaintiffs' original Complaint (ECF No. 40).   Defendants opposed the motion (ECF No. 42).   The Court granted Plaintiffs' motion in part, authorizing notice to be sent to LTC Case Managers and Medical Necessity Specialists outside of the Northern District of Florida (ECF No. 63).  Since the filing of this case, the Plaintiffs plus 80 individuals have opted into the case as plaintiffs (there are 82 Opt-In Plaintiffs, including the two Named Plaintiffs).  As stated in the consent to join the case signed by each Opt-In Plaintiff, each designated Plaintiffs' counsel to represent them.  Each

Opt-In Plaintiff also designated Plaintiffs to make decisions for them regarding all matters concerning the litigation, including negotiating a resolution of their claims (*Id.*).

During the course of the litigation, the parties engaged in extensive factual investigation and formal and informal discovery relating to the claims of the Plaintiffs and the Opt-In Plaintiffs in the case, including interviewing witnesses, obtaining information relating to the employment and earnings of each Opt-In Plaintiff, and propounding and responding to written discovery.  The parties have vigorously litigated this case and they have conducted extensive discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this action.  *See* Declaration of Noah Storch (hereinafter "Storch Decl.") at ¶10.

Following discovery and investigation, the parties mediated the case before a certified mediator in Miami on July 30, 2019.  At that mediation, the parties reached a settlement of the case which is reflected in the Confidential Settlement Agreement and Release ("Settlement Agreement").  *See* Storch Decl. at ¶11.

The Settlement Agreement is filed herewith as **Exhibit 1** to Storch Decl.  The Settlement Agreement provides for payment of the Total Settlement Amount of $385,000.00.  Of this total sum, $185,278.56 is to be paid to the Plaintiffs and Opt-In Plaintiffs for their alleged damages and allocated to each individual as Individual Settlement Payments based upon various factors, including dates of employment in an eligible position, rates of pay, and opt-in dates.[1]  The Settlement Agreement further

---

[1] As part of the negotiation and settlement of this matter, the parties agreed that $5,500.00 of the Total Settlement Amount would be apportioned and used for Individual Settlement Payments in the amount of $250.00 to each of the Ineligible Plaintiffs.  The amounts to be paid to the Ineligible Plaintiffs are included in the $185,278.56 total above.  As agreed by the Parties, an unallocated residual of $500.00 from this portion of the Total Settlement Amount shall be used toward the Settlement Administrator's expenses.

provides for payment of a $10,000.00 service payment to each of the named Plaintiffs Gudger and King in recognition of their services on behalf of the collective (total of $20,000.00), and payment of a sum of $179,221.44 to Plaintiffs' counsel as attorney's fees and costs, including the costs of administration of the settlement.  The attorney's fees and costs were separately negotiated, and the parties agree that Plaintiffs' Counsel shall be paid this amount.  In exchange for this consideration, the Plaintiffs and Opt-In Plaintiffs have agreed to release claims for overtime (and consistent with the doctrine of res judicata) up to and through the date of the execution of the Settlement Agreement and to dismiss the case with prejudice.  All terms of the Settlement Agreement are subject to the Court's approval.

The Defendants have agreed to the settlement for the purpose of efficiently resolving this litigation and thereby saving further litigation expenses.  Defendants do not admit the alleged violations contained in the Amended Complaint and maintain that they at all times acted in good faith and without knowledge of or participation in any alleged wrongdoing.  Defendants maintain that Plaintiffs Gudger and King and the Opt-In Plaintiffs were properly classified as exempt from overtime under the FLSA.  The Plaintiffs have agreed to the settlement because they believe that it represents a fair, adequate and reasonable settlement of the case under all circumstances and takes into account the risks and costs of going forward with the case.

Through a settlement administrator, each of the Opt-In Plaintiffs has been notified of the terms of the settlement as it relates to them, including the amount of the settlement payment they will receive. All Opt-In Plaintiffs had an opportunity to submit an objection to the settlement.  The 45-day deadline for submitting objections has expired.  No Opt-In

4

Plaintiff submitted an objection to the settlement.  *See* Storch Decl. at ¶13.  This joint motion and brief for approval of the settlement follows.

## II.    Approval of FLSA Collective Action Settlements.

The Eleventh Circuit has held that FLSA claims may only be settled or compromised in one of two ways: supervision by the Secretary of Labor under 29 U.S.C. § 216(c), or court approval.  *Lynn's Food Stores, Inc. v. U.S. US Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714 (E.D. La. 2008) (containing an extended discussion of FLSA settlements, approval, and the differences between FLSA class actions and Fed. R. Civ. P. 23 class actions).

As stated in *Lynn's Foods*, the court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  679 F.2d at 1355. The purpose of the requirement that there be a "bona fide dispute" is to ensure that the parties are not "negotiating around the clear FLSA requirement of compensation for all hours worked, minimum wages, maximum hours, and overtime."  *Collins*, 568 F. Supp. 2d at 719.  In short, the court must find that there is "some doubt" the plaintiffs would succeed on the merits of their claims.  *Id*.  However, as stated in *Lynn's Foods*, "[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation."  *Lynn's Foods*, 679 F.2d at 1354.  Courts are to review FLSA settlements with a strong presumption in favor of finding a settlement fair.  *See Bonetti v. Embarq Management Co.,* 715 F.Supp.2d 1222, 1227 (M.D. Fla. 2009) ("[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will,

almost by definition, be reasonable.").

### A.    There Exists a Bona Fide Dispute.

There exists a bona fide dispute in this case over several issues, including the Defendants' "administrative" and "professional" employee exemption defenses under 29 U.S.C. § 213(a)(1), the computation of potential damages, the number of overtime hours worked by each plaintiff, the "good faith" defenses under 29 U.S.C. §§ 259 and 260, and the "willfulness" requirement to trigger a potential third year of liability under 29 U.S.C. § 255.  The parties believe there are bona fide disputes on all of the above issues, disputes that would have to be resolved by summary judgment or a trial on the merits.  The parties recognize that, among these disputes, proof of the exemption defenses and the number of hours worked by the Plaintiffs would entail substantial time, effort, and expense, and present significant risks for both parties because of the need to examine extensive data and obtain fact-specific information from the individual Opt-In Plaintiffs.

Based upon the foregoing, there are clearly "bona fide" disputes in this case.

### B.    The Settlement Is Fair and Reasonable.

The existence of a "bona fide" dispute is a significant indicator that the settlement is fair and reasonable.  The Court should further look at the "strength and nature of the claim in light of the possible defenses."  *Collins v. Sanderson Farms*, 568 F. Supp. 2d at 719 n. 6, quoting *Brask v. Heartland Automotive Svs.*, 2006 WL 2524212, at *2 (D. Minn. 2006).   However, in undertaking this analysis the court should keep in mind the policy favoring settlement as the preferred means of resolving cases and the "strong presumption" in favor of finding a settlement to be fair.  *Id.*; *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  "A settlement is in large measure a reasoned choice of a certainty over a

gamble, the certainty being the settlement and the gamble being the risk that comes with going to trial." *Paradise v. Wells*, 686 F. Supp. 1442, 1446 (M.D. Ala. 1988).  It is not "whether the proposed [settlement] is the best possible deal," but whether it is "at a minimum, fair, adequate and reasonable."  *Id*. at 720.

Based upon the factors described herein, the parties believe that the settlement is fair and reasonable.

Subject to Court approval, the settlement provides for the Defendants to pay in settlement of all claims in the case the amount of $385,000.00, which is allocated as follows: $185,278.56 is to be paid to the Plaintiffs and Opt-In Plaintiffs for their alleged damages and allocated to each individual based upon various factors, including dates of employment in an eligible position, rates of pay, and opt-in dates; service payment to each of the named Plaintiffs Gudger and King in recognition of their services on behalf of the collective (total of $20,000.00); $500.00 will be used toward payment of the Settlement Administrator's fees and expenses; and a separately negotiated payment of a sum of $179,221.44 to Plaintiffs' counsel as attorney's fees and costs, including all additional costs of administration of the settlement.

The application of objective factors for the Individual Settlement Payments to Opt-In Plaintiffs (based on dates of employment, rates of pay, and opt-in dates) ensures that each Plaintiff is treated fairly.  The vast majority of the Plaintiffs were only employed for a short period during the possible statute of limitations, and thus the individual payments are relatively small.[2]   The Individual Settlement Payments represent a reasonable

---

[2] Defendants changed their policy regarding payment of overtime and began paying LTC Case Managers overtime in July 2016 in anticipation of changes to the FLSA regulations.

approximation of the overtime hours that the Opt-In Plaintiffs worked, plus an equal amount of liquidated damages. *See* Storch Decl. at ¶22. The settlement also reflects an appropriate discount for anticipated challenges in establishing liability and damages, such as the possibility of Defendants proving one of their exemption defenses and the uncertainty associated with proving the Defendants' alleged "willfulness" as required by 29 U.S.C. § 260. The Plaintiffs have the burden of proof in showing the Defendants acted "willfully" in failing to pay overtime in order to secure a third year of damages. Accordingly, the settlement represents an excellent result for all Opt-In Plaintiffs, inasmuch as it is well within the range of what each could reasonably expect to recover if they had prevailed at trial. Moreover, all or some of them could have recovered nothing if they had taken the case to trial.

Finally, while Fed. R. Civ. P. 23 does not control Rule 216(b) collective actions, in deciding whether an FLSA settlement is fair and reasonable, courts have considered the following additional factors that have been utilized in Rule 23 class actions: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members." *Collins*, 568 F. Supp. 2d at 722. The following discusses these factors starting with the sixth factor.

1.      **The Opinions of Plaintiffs' Counsel, Named Plaintiffs, and Opt-In Plaintiffs.**

a.      **Opinion of Plaintiffs' Counsel.**

For the reasons stated above, Plaintiffs' Counsel believes that the settlement is fair, adequate, and reasonable, and represents an excellent result for the Opt-In Plaintiffs.  The settlement provides significant monetary relief to Opt-In Plaintiffs in light of the overtime allegedly due, and the various defenses raised by the Defendants to recovery and the amount of recovery.  *See* Storch Decl. at ¶23.  Based upon these factors, it is Plaintiffs' Counsel's reasoned judgment that the settlement is fair, adequate and reasonable.  *Collins*, 568 F. Supp. 2d at 727 ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.").

b.      **Opinion of Named Plaintiffs.**

The Plaintiffs' representatives, Jody Gudger and Rhonda King, having not objected to the settlement and having signed the Settlement Agreement, have shown their support for it.  They actively participated in the mediation and settlement negotiations and are fully aware of the various factors considered in the negotiation of the settlement and the arrival of the settlement amounts for each Opt-In Plaintiff and the attorney's fees and costs.  *See* Storch Decl. at ¶27.

c.      **Opinions of Opt-In Plaintiffs.**

As observed in *Collins*, 568 F. Supp. 2d at 727-28,

The consideration of the "opinions of absent class members" is one that perhaps reflects the starkest difference between class actions under Rule 23 and collective actions pursuant to § 216(b), that is, the requirement that class members affirmatively give their consent to join in the latter. All the present plaintiffs to this collective action have agreed to join in this lawsuit, and be represented by the named plaintiffs' counsel. [footnote omitted.]  Further,

counsel has averred in an affidavit that all those who have consented to participate have received the description of the settlement, whether they joined the lawsuit prior to the settlement agreement or after (those who joined after received notice of the settlement's terms approved by the Court) . . . . Thus all participating plaintiffs have expressed an opinion regarding the settlement, to a degree that satisfies the Court, by virtue of remaining in the lawsuit. Because no real "absent" class members exist whose rights will be determined in this settlement who have not consented to participate, the Court need not consider such interests as it would in a settlement of a class action under Rule 23.

While, as noted in *Collins*, none of the Opt-In Plaintiffs in this case are "absent class members" in the sense that class members are in a Rule 23 class action, each Opt-In Plaintiff received notice of the settlement and was advised of the amount that he or she will receive. Not one of the 82 Opt-In Plaintiffs has objected to the settlement. *See* Storch Decl. at ¶28. This shows that the Opt-In Plaintiffs support the fairness, adequacy, and reasonableness of the settlement.

### 2.      The Existence of Collusion Behind the Settlement.

There has been no collusion behind the settlement and there has been no allegation of any. The parties participated in a full-day mediation with an experienced mediator to negotiate the settlement terms and spent many hours revising and exchanging drafts of settlement documents to reach an arm's length settlement. *See* Storch Decl. at ¶29. The proposed settlement is the product of vigorous litigation and extensive negotiation.

### 3.      The Complexity, Expense, and Likely Duration of the Litigation.

The case presents complex legal and factual issues. If the case were to be fully litigated, it would likely entail taking depositions of all or a significant majority of the Opt-in Plaintiffs, as well as the depositions of a significant number of non-party witnesses on such issues as Defendants' exemption and "good faith" defenses, whether the Defendants'

conduct was "willful" for purposes of the applicable statute of limitations, the number of hours worked by the Opt-in Plaintiffs, and the method of calculating potential damages. This discovery would result in substantial additional time and expense in further litigation of the case beyond that already incurred. Summary judgment proceedings, a decertification motion, a trial on the merits of issues not resolved at summary judgment, and potential subsequent hearings and/or separate proceedings on damages would have been lengthy, time consuming, and expensive, given the size of the collective and the vigorous defense mounted so far by the Defendants, and would likely result in protracted appellate proceedings lasting many, many years.

### 4.     The Stage of the Proceedings and Amount of Discovery Completed.

At the time of the settlement, the case was in a relatively advanced stage. During the course of the litigation, the parties engaged in extensive factual investigation and formal and informal discovery relating to the claims of the Plaintiffs and the Opt-In Plaintiffs in the case, including interviewing witnesses, obtaining information relating to the employment and earnings of each Opt-In Plaintiff, and propounding and responding to written discovery. The parties have vigorously litigated this case and they have conducted extensive discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this action. *See* Storch Decl. at ¶11. The stage of the proceedings demonstrates that the settlement is based upon an adequate investigation and evaluation of the relative strengths and weaknesses of both parties' cases.

### 5.     The Range of Possible Recovery

The settlement in this case is well within the range of possible recovery. As noted above, the settlements amounts represent payment of a reasonable approximation of the

overtime hours that the Opt-In Plaintiffs worked, based on a half-time method of calculating overtime pay, plus an equal amount of liquidated damages.  *See* Storch Decl. at ¶20.  The settlement also reflects an appropriate discount for anticipated challenges in establishing liability and damages, such as the possibility of Defendants proving one of their exemption defenses and the uncertainty associated with proving the Defendants' alleged "willfulness" as required by 29 U.S.C. § 260.  Accordingly, the settlement represents an excellent result for all Opt-In Plaintiffs, particularly considering that they could have recovered nothing.

      **6.     The Probability of the Plaintiffs' Success on the Merits.**

In entering into the settlement, the Plaintiffs and their counsel have considered the likelihood of success at trial.  While the Plaintiffs believe there was a likelihood of success on the issue of whether the Plaintiffs were improperly exempted from the overtime provisions of the FLSA, Defendants vigorously dispute the issue of liability and believe they have strong evidence showing the exempt duties of the Plaintiffs, which would be further developed through additional discovery.  Defendants also believe that discovery of the Opt-in Plaintiffs would show numerous individual issues supporting decertification of the collective action, which applies a much higher standard than the conditional certification stage.  There were also substantial disputes relating to the number of overtime hours worked by the Plaintiffs, the limitations period, and whether the Plaintiffs could recover liquidated damages and prove "willfulness."  These issues pose significant obstacles to ultimate success and the amount of the recovery that could be obtained.  Therefore, the settlement is in the best interest of the Opt-In Plaintiffs and is fair and reasonable.

### III.   The Service Payments to Named Plaintiffs Jody Gudger and Rhonda King.

The Settlement Agreement also provides for the payment of $10,000.00 to each of the named Plaintiffs, Jody Gudger and Rhonda King.  This amount is fair and reasonable in light of their substantial services to the Opt-In Plaintiffs.  Plaintiffs Gudger and King have participated actively in the case and expended many hours in service of the Opt-In Plaintiffs.  They have informed themselves of the facts and legal theories underlying the case and of the nature of representative collective actions under the FLSA.  They have assisted counsel in communicating with the Opt-In Plaintiffs, and actively participated in the mediation and settlement negotiations, as well as assisted Plaintiffs' Counsel in numerous other ways in service to the Opt-In Plaintiffs.  *See* Storch Decl. at ¶26-27.  They have taken a substantial risk of being saddled with a significant judgment for costs and expenses in the event the case was unsuccessful.  The courts have routinely approved service payments to class representatives in class actions, including FLSA collective actions.  *See, e.g., Su v. Elec. Arts, Inc.*, No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at *5 (M.D. Fla. Aug. 29, 2006); *Plummer v. PJCF, LLC*, No. 2:15-cv-37-FtM-38CM, 2015 WL 5952426, at *3 (M.D. Fla. Oct. 13, 2015); *Ingram v. Coca-Cola Company*, 200 F.R.D. 685 (N.D. Ga. 2001).

### IV.   The Attorney's Fees and Costs Paid to Plaintiffs' Counsel.

The Settlement Agreement provides that Plaintiffs' counsel will receive $179,221.44 in payment of attorney's fees and costs, including costs of administration of the settlement.  These amounts were negotiated separately from those amounts proposed to be paid to the Plaintiffs and Opt-In Plaintiffs.  These amounts are fair and reasonable,

given the fees and costs incurred in this matter, as well as Plaintiffs' Counsel's extensive experience litigating FLSA collective actions, the Defendants' vigorous defense, and the excellent results obtained on behalf of Plaintiffs and the Opt-In Plaintiffs.  Declaration of *See* Storch Decl. at ¶34.

As stated in *Vogenberger v. ATC Fitness Cape Coral, LLC*, Case No. 2:14-cv-436-FtM-29CM, 2015 WL 1883537, at *4, (M.D. Fla., Order of April 15, 2015), an FLSA case, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." 2015 WL 1883537, at *5 (finding the requested fees reasonable "upon consideration of the time and effort spent by Plaintiffs' counsel, his experience litigating FLSA collective actions, as represented by the parties, and the time and effort by Plaintiffs' counsel that still will be necessary to effectuate the settlement"); *see also King v. My Online Neighborhood, Inc.*, No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007).  The Named Plaintiffs actively participated in negotiation of the settlement, including separate negotiation of the attorney's fees and costs.  The Opt-In Plaintiffs received notice of the terms of the settlement, including the attorney's fees and costs to be paid, and none objected to the amount.  The attorney's fees and costs are reasonable in light of the extensive time spent by Plaintiffs' Counsel litigating this case and obtaining an excellent result for the Opt-In Plaintiffs.

## VI.    Conclusion

Based upon the foregoing, the parties request that the Court enter an order approving the settlement agreement proposed by the parties, including the settlement amounts to the Opt-In Plaintiffs, the service payments to Plaintiffs Gudger and King,

Plaintiffs' attorney's fees and costs, and all other terms of the parties' Settlement

Agreement, and dismiss this action with prejudice.  A proposed order is filed herewith.

Dated this 17th day of April 2020.

Respectfully submitted,

RICHARD CELLER LEGAL, P.A.
10368 W. SR. 84, Suite 103
Davie, Florida 33324
Tel: (954) 243-4295
Fax: (954) 337-2771

*/s/ Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No. 0085476
E-mail: noah(@floridaovertimelawyer.com

*Attorneys for Plaintiffs*

LITTLER MENDELSON, P.C.
Wells Fargo Center
333 S.E. 2nd Avenue, Suite 2700
Miami, Florida 33131
Tel: (305) 400-7500
Fax: (305) 603-2552

*/s/ Breanne Sheetz Martell*
Aaron Reed, Esq.
Florida Bar No. 0557153
E-mail: *areed@littler. com*

Douglas E. Smith, Esq.
E-mail: *desmith@littler. com*
Breanne Sheetz Martell, Esq.
E-mail: *bsmartell@littler.com*
LITTLER MENDELSON, P.C.
600 University Street, Suite 3200
Seattle, W A 981 01.3122
Tel: (206) 623-3300
Fax: (206) 447-6965

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 17th day of April, 2020, a true and correct

copy of the foregoing document was:

| | |
|---|---|
| ☒ | **ELECTRONICALLY FILED** in the US District Court, Southern District of Florida, using the CM/ECF system which will send notification of such filing to all counsel of record, listed below. |
| ☐ | **SERVED** by email, ***pursuant to the Email Service Agreement*** of the parties on the following parties. |
| | |

*/s/ Noah E. Storch*
Noah E. Storch, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

JODY GUDGER AND RHONDA KING,
on behalf of themselves and those
similarly situated,

      Plaintiffs,                                CASE NO. 2:17-cv-14281-JEM

v.

CENTENE MANAGEMENT
COMPANY, LLC., a Foreign Limited
Liability Company, and SUNSHINE
STATE HEALTH PLAN, INC., a
Florida Profit Corporation.

      Defendants.
_____/

## DECLARATION OF NOAH E. STORCH IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF THE COLLECTIVE ACTION SETTLEMENT, APPROVAL OF SERVICE AWARDS, AND APPROVAL OF ATTORNEYS' FEES AND COSTS

I, Noah E. Storch, declare under 28 U.S.C. § 1746 as follows:

1.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

2.      I am a Partner at the law firm of Richard Celler Legal, P.A. ("RCL") in Davie, Florida.

3.      Richard Celler Legal, P.A. represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims.

4.      Along with Richard Celler, Esq., I have been responsible for the prosecution

of Plaintiffs' claims on behalf of the Opt-In Plaintiffs in this matter.

5.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## RELEVANT PROCEDURAL HISTORY

6.      Plaintiff Gudger, individually and on behalf of similarly situated employees of the Defendants, filed her Complaint on August 7, 2017 (ECF No. 1), and Plaintiff King joined her to file pursuant to the filing of an Amended Complaint on February 20, 2018 (ECF No. 36).   Plaintiffs alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., based on the Defendants' exempting them and other Long Term Care (LTC) Case Managers and Medical Necessity Specialists employed by the Defendants from the overtime provisions of the FLSA.  The Defendants filed an Answer denying the allegations in the Amended Complaint (ECF No. 37).

7.      Plaintiffs filed a Motion for Conditional Certification ("Motion") seeking to represent and send notice to a collective of LTC Case Managers and Medical Necessity Specialists who were employed by the Defendants in the State of Florida during the time period starting three years prior to the filing of Plaintiffs' original Complaint (ECF No. 40).   Defendants opposed the Motion (ECF No. 42).   The Court granted Plaintiffs' Motion in part, authorizing notice to be sent to LTC Case Managers and Medical Necessity Specialists outside of the Northern District of Florida (ECF. No. 63).

8.      Since the filing of this case, the Plaintiffs plus 80 individuals have opted into the case as Opt-in Plaintiffs (82 total individuals).  As stated in the consent to join signed by each Opt-In Plaintiff, each designated Plaintiffs' counsel to represent them.

Each Opt-In Plaintiff also designated Plaintiffs to make decisions for them regarding all matters concerning the litigation, including negotiating a resolution of their claims.

9.     After several rounds of briefing, on May 22, 2018, Magistrate Judge Shaniek M. Maynard entered a Report and Recommendation recommending that the Court grant Plaintiffs' Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members, which recommendation was adopted by Order of this Court dated July 24, 2018. *See* ECF Nos. 57 and 63, respectively.

## LITIGATION

10.     During the course of the litigation, Plaintiffs' Counsel engaged in extensive factual investigation and formal and informal discovery relating to the claims of the Plaintiffs and the Opt-In Plaintiffs in the case, including interviewing witnesses, obtaining information relating to the employment and earnings of each Opt-In Plaintiff, and propounding and responding to written discovery.

11.     Following discovery and investigation, the parties mediated the case before a certified mediator in Miami on July 30, 2019.  At that mediation, the parties reached a settlement of the case which is reflected in the Confidential Settlement Agreement and Release ("Settlement Agreement").  *See* Settlement Agreement attached as **Exhibit 1.**

12.     The Settlement Agreement provides for payment of the total sum of $385,000.00.  Of this total sum, $180,278.56 is to be paid to the Plaintiffs and eligible Opt-In Plaintiffs for their alleged damages and allocated to each individual based upon various factors, including dates of employment in an eligible position, rates of pay, and opt-in dates.  As part of the negotiation and settlement of this matter, the Parties agreed that

$5,500.00 of the Total Settlement Amount shall be apportioned and used for the Individual Settlement Payments in the amount of $250.00 to each of the Ineligible Plaintiffs (which ended up being $5,000.00 after the allocation). The unpaid residual from this $5,500.00 portion of the Total Settlement Amount (which is $500.00) shall be used toward payment of the Settlement Administrator's fees and expenses. The Settlement Agreement further provides for payment of a $10,000.00 service reward payment to each of the named Plaintiffs, Gudger and King, in recognition of their services on behalf of the collective ($20,000.00 total); and payment of a sum of $179,221.44 to Plaintiffs' counsel as attorney's fees and costs, including the costs of administration of the settlement. The attorney's fees and costs were separately negotiated. In exchange for this consideration, the Plaintiffs and Opt-In Plaintiffs have agreed to release claims for overtime (and consistent with the doctrine of res judicata) up to and through the date of the execution of the Settlement Agreement and to dismiss the case with prejudice. All terms of the Settlement Agreement are subject to the Court's approval.

13.     Through a settlement administrator, counsel for Plaintiffs has notified each of the Opt-In Plaintiffs of the terms of the settlement as it relates to them, including the amount of the settlement payment they will receive. All Opt-In Plaintiffs had an opportunity to submit an objection to the settlement.

14.     The 45-day deadline for submitting objections passed on February 10, 2020. No Opt-In Plaintiff submitted an objection to the settlement.

## PRE-MEDIATION/SETTLEMENT DISCOVERY

15.    The parties engaged in significant discovery before agreeing to resolve this case.

16.    As the Court is aware, this case has been pending for well over two years.

17.    During that time Defendants have produced thousands of pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, reports, and memoranda, as well responses to Requests for Admissions and Interrogatories.

18.    Similarly, Plaintiffs also responded to interrogatories and document requests for multiple Plaintiffs and opt-ins. In addition, Plaintiffs' counsel interviewed dozens of opt-in Plaintiffs regarding their duties, pay structure (and amounts), and hours worked.

## SETTLEMENT NEGOTIATIONS

19.    As noted above, the parties participated in an all-day mediation, on July 30, 2019, with Mediator Marlene Quintana.  After the mediation, the parties executed a Memorandum of Understanding which contained all material terms of the settlement.

20.    Subsequently, the parties drafted a detailed settlement agreement, which incorporated all terms and which all parties have signed.

## TERMS OF SETTLEMENT

21.    The settlement provides for the Defendants to pay in settlement of all claims in the case the amount of $385,000.00, which is allocated as detailed above. $185,278.56 of the Total Settlement Amount is to be paid to the Plaintiffs and Opt-In

Plaintiffs for their alleged damages and allocated to each individual based upon various factors, including dates of employment in an eligible position, rates of pay, and opt-in dates.

22.     Through a settlement administrator, counsel for Plaintiffs has notified each of the Opt-In Plaintiffs of the terms of the settlement as it relates to them, including the amount of the settlement payment they will receive. All Opt-In Plaintiffs had an opportunity to submit an objection to the settlement. The 45-day deadline for submitting objections passed on February 10, 2020. No Opt-In Plaintiff submitted an objection to any aspect of the settlement, including the service payments to the Named Plaintiffs and attorneys' fees and costs.

23.     Plaintiffs' Counsel believes that the settlement is fair, adequate, and reasonable, and represents an excellent result for the Opt-In Plaintiffs. The settlement provides significant monetary relief to Opt-In Plaintiffs in light of the overtime allegedly due, and the various defenses raised by the Defendants to recovery and the amount of recovery.

24.     Based upon these factors, it is Plaintiffs' Counsel's reasoned judgment that the settlement is fair, adequate and reasonable. *Collins*, 568 F. Supp. 2d at 727 ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.").

## EFFORTS OF NAMED PLAINTIFFS
## JODY GUDGER AND RHONDA KING

25.     Named Plaintiffs, Jody Gudger ("Gudger") and Rhonda King ("King") performed significant services to and on behalf of the Opt-In Plaintiffs.

26.     Gudger and King assisted Plaintiffs' counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties and those of other opt-ins, the wages they were paid, the hours that they worked, and other information relevant to their claims. They also regularly communicated with Plaintiffs' Counsel, attended mediation, and provided extensive feedback on the terms of the settlement.

27.     Additionally, Gudger and King, having not objected to the settlement and having signed the Settlement Agreement, have shown their support for it.  As stated above, they actively participated in the mediation and settlement negotiations and are fully aware of the various factors considered in the negotiation of the settlement and the arrival of the settlement amounts for each Opt-In Plaintiff and the attorney's fees and costs.

28.     Not one of the 82 Opt-In Plaintiffs has objected to any aspect of the settlement.  This shows that the Plaintiffs and Opt-In Plaintiffs support the fairness, adequacy, and reasonableness of the settlement.

29.     There has been no collusion behind the settlement and there has been no allegation of any.  The parties participated in a full-day mediation with an experienced mediator to negotiate the settlement terms and spent many hours revising and exchanging drafts of settlement documents to reach an arm's length settlement.  The proposed settlement is the product of vigorous litigation and extensive negotiation.

## CLAIMS ADMINISTRATION

30.     Plaintiffs retained Phoenix Class Action Administration Solutions who handled the distribution of notice and will be handling administration of the settlement.

31.     Attached hereto as Exhibit 2, is the Declaration of Elizabeth K. Kruckenberg, dated April 9, 2020, setting forth the details regarding the administration of the settlement.

32.     Phoenix has not received any objections to the Settlement from any Opt-In Plaintiff.

## ATTORNEY'S FEES AND COSTS

33.     The Settlement Agreement provides that Plaintiffs' counsel will receive $179,721.44[1] in payment of attorney's fees and costs, including costs of administration of the settlement.  These amounts were negotiated separately from those amounts proposed to be paid to the Plaintiffs and Opt-In Plaintiffs.

34.     The Settlement Agreement is not conditioned on the award of attorneys' fees, and explicitly states that it is subject to Court approval.

---

[1] This is a within the range of typical fee award in a common fund case. *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012)("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation...' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012)(class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011)(approving class settlement with one-third of maximum common fund apportioned as attorneys fees); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95-cv-02152-ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99-md-01317-PAS, Doc. No. 1557 at 8-10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

35.     These amounts are fair and reasonable, given Plaintiffs' Counsel's extensive experience litigating FLSA collective actions, the Defendants' vigorous defense, and the excellent results obtained on behalf of Plaintiffs and the Opt-In Plaintiffs. In addition, Plaintiffs' Counsel incurred approximately $9,197.30 in out-of-pocket costs prosecuting the litigation, which were incidental and necessary to the representation of the Opt-In Plaintiffs and which include electronic research, mediation fees, postage, photocopies, filing fees, class administrator and service of process costs.

36.     Plaintiffs' Counsel has vigorously litigated this case and has conducted extensive discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this action.

37.     Plaintiffs' Counsel's experience was directly responsible for bringing about the positive settlement. The Law firm of Richard Celler Legal, P.A. ("RCL") has significant experience prosecuting and/or settling wage and hour class and collective actions.

38.     Since July 2017, Plaintiffs' Counsel has spent more than 475 hours litigating and settling this litigation, including time spent by Paralegals and Legal Assistants.

39.     RCL has made every effort to avoid duplication of efforts and to have work performed by a paralegal when possible.

40.     The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by each attorney,

paralegal, and support staff person participating in the case.

41.     In our experience, Florida law firms that represent plaintiffs in employment matters, and those law firms that handle such cases in Florida, typically charge their client at least one-third of their gross recoveries when they represent them on a contingency basis, in the context of class and/or collective action litigation.

42.     The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Plaintiffs' Counsel for time that they will be required to spend administering the settlement in the future. In our experience, administering class and collective settlements of this nature and size requires a substantial and ongoing commitment. For example, since the Notice was mailed, Plaintiffs' Counsel and staff have responded to inquiries from Opt-In Plaintiffs requesting information regarding the terms of the settlement and the amount of their settlement award. Plaintiffs' Counsel expects to respond to more Opt-In Plaintiff inquiries after approval of the settlement, especially after checks are issued.

43.     Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk. Wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any

kind. Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

44.     To date, Plaintiffs' Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.  Further, the time spent on this case precluded the undersigned from spending such time working on other matters.

## COUNSEL'S BACKGROUND AND EXPERIENCE

45.     I graduated from the University of Central Florida in 2007 with a Bachelor of Science Degree, and attended the Nova Southeastern University, Shepard Broad Law Center, where I received my Juris Doctor, in 2010. I was admitted to the Florida Bar in 2010, and since that time, have practiced both on the plaintiff and defense side in employment law.

46.     Since 2010, I have practiced in the area of wage hour and employment law with significant experience in providing advice and litigating lawsuits arising under federal and state employment and discrimination laws. To that end, I worked on the defense/management side as an associate at Jackson Lewis, LLP, Littler Mendelson, P.C., and Cole Scott & Kissane, P.A., representing companies in complex FLSA and employment matters until approximately 2016. After leaving the defense/management side of employment law, I joined Richard Celler Legal, P.A., and am a Partner.

47.     To that end, I have served or am serving as lead counsel in Wage and Hour Class/Collective Actions in the Middle and Southern District of Florida.

48      Based on my qualifications, and experience, my reasonable hourly rate has been held to be $450 per hour.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on this 10th day of April, 2020.

*Noah Storch, Esq.*
NOAH E. STORCH, ESQ.

# "EXHIBIT 1"

## <u>CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE</u>

This Confidential Settlement Agreement and Release ("Settlement Agreement") is entered into by and between the Parties, Plaintiffs Jody Gudger and Rhonda King ("Named Plaintiffs"), in their individual capacity and in their representative capacity on behalf of all Opt-In Plaintiffs in the Lawsuit described below, and Defendants Centene Management Company, LLC and Sunshine State Health Plan, Inc. ("Defendants").

WHEREAS, Named Plaintiffs are representatives of all plaintiffs who have joined as Opt-In Plaintiffs in the case captioned *Gudger et al. v. Centene Management Company, LLC et al.*, Case No. 2:17-cv-14281-JEM, pending in the United States District Court for the Southern District of Florida (the "Lawsuit");

WHEREAS, the Parties have engaged in extensive written discovery and have conducted a thorough investigation into the Plaintiffs' claims and Defendants' defenses thereto;

WHEREAS, the Opt-In Plaintiffs expressly designated the Named Plaintiffs to make decisions on their behalf concerning the Lawsuit, including negotiating a resolution of their claims, in their Consent to Join forms filed with the Court;

WHEREAS, the Parties participated in a full-day settlement mediation conference with mediator Marlene Quintana on July 30, 2019, at which time the parties reached a resolution of the Lawsuit ("Settlement"); and

WHEREAS, the Parties desire to fully settle the Lawsuit in order to avoid the expense, uncertainty, and distractions of litigation;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the parties agree, subject to the Court's approval, as follows:

1.  **<u>No Admission of Liability or Fault.</u>**  In entering into this Settlement Agreement, Defendants do not admit, and specifically deny, that they have: violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations, or legal requirements; breached any contract; or engaged in any other unlawful conduct with respect to their employees or any other person or entity.  Neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants or the Released Parties of any such violation(s) or failure(s) to comply with any applicable law, who expressly deny any liability, wrongdoing, impropriety, responsibility, or fault whatsoever.

2.  **<u>Scope of the Settlement.</u>**  Subject to Court approval, the Settlement shall cover all Opt-In Plaintiffs who have filed Consent to Join forms in the Lawsuit.  There are 82 Opt-In Plaintiffs, including the two Named Plaintiffs.  A list of all Opt-In Plaintiffs is attached hereto as Exhibit A.  Included in this group are twenty Opt-In Plaintiffs who do not have

valid claims within the maximum three-year FLSA statute of limitations ("Ineligible Plaintiffs").

3.     **Settlement Amount.** As a settlement and compromise of this Lawsuit in exchange for the terms described herein, and without admitting the merits of any claim or defense, the Parties have agreed to a settlement of this matter covering all Opt-In Plaintiffs (as defined above in paragraph 2), under which Defendants will pay an "all in" settlement amount of $385,000.00 ("Total Settlement Amount"), which will be allocated and paid as follows:

    a.   **Payments to Opt-In Plaintiffs.**

        i.   **Allocation of Individual Settlement Payments.** Plaintiffs' Counsel will calculate the individual gross settlement amounts ("Individual Settlement Payments") to be allocated to the Opt-In Plaintiffs identified in paragraph 2 based on their dates of employment in an exempt LTC Case Manager or Medical Necessity Specialist position during the three years prior to their individual opt-in dates, rates of pay, and pro rata share of the total Settlement Common Fund, which calculations shall be subject to reasonable review and approval by Defendants. The Parties agree that no Opt-In Plaintiff will receive less than a minimum Individual Settlement Payment of $250.00.

       ii.   **Eligible Plaintiffs.** A Settlement Common Fund of $180,278.56 from the Total Settlement Amount shall be apportioned and used to pay all Individual Settlement Payments to the Opt-In Plaintiffs, excluding the Ineligible Plaintiffs.

      iii.   **Ineligible Plaintiffs.** As part of the negotiation and settlement of this matter, the Parties have agreed that $5,500.00 of the Total Settlement Amount shall be apportioned and used for the Individual Settlement Payments in the amount of $250.00 to each of the Ineligible Plaintiffs. Any unpaid residual from this $5,500.00 portion of the Total Settlement Amount shall be used to pay the Settlement Administrator's fees and expenses. In the event Plaintiffs' Counsel has to pre-pay for the Settlement Administrator's fees and expenses prior to funding on this Settlement, any unpaid residual from the foregoing amount shall be made payable to Richard Celler Legal, P.A.

      iv.   **Taxation.** Each Opt-In Plaintiff will receive two settlement checks consisting of the following: (a) one half (50%) of each Individual Settlement Payment will be paid and reported as wages for tax purposes, minus appropriate withholdings, with the Opt-In Plaintiff receiving an IRS Form W-2; and (b) the other half (50%) of each Individual Settlement Payment will be treated as a settlement of Plaintiffs' claim for liquidated damages, exemplary damages, and interest, and will be paid and reported on an IRS Form 1099. In processing and issuing any Individual Settlement Payments,

the Settlement Administrator shall be responsible for making all appropriate and lawful deductions from such Individual Settlement Payments and disbursing them to the appropriate taxing authorities. Each Opt-In Plaintiff shall be responsible for paying any taxes due on his or her Individual Settlement Payment, other than the employer's share of payroll taxes on the wage payment. Defendants shall be separately responsible for paying the employer's portion of payroll taxes attributable to the portions of the Individual Settlement Payments that are characterized as wages, as calculated by the Settlement Administrator, which the Settlement Administrator shall disburse to the appropriate taxing authorities.

b. **Attorneys' Fees and Costs.** As part of the mediation and settlement in this matter, the Parties negotiated the amount to be paid to Plaintiffs' Counsel for all attorneys' fees and costs incurred in the Lawsuit separate and apart from the Settlement Common Fund. In settlement of all attorneys' fees and costs incurred by Opt-In Plaintiffs in the Lawsuit, the Parties have agreed that Plaintiffs' Counsel shall be paid the amount of $179,221.44 of the Total Settlement Amount, subject to Court approval. Plaintiffs' Counsel is taking no payment from the Settlement Common Fund payable to the Opt-In Plaintiffs, and the attorneys' fees and costs are being paid independently based on the time and effort invested by Plaintiffs' Counsel. Because Plaintiffs' Counsel's attorneys' fees and costs were negotiated and agreed upon separately from the Settlement Common Fund, Plaintiffs' Counsel does not anticipate having to file a motion for final approval of attorneys' fees and costs. However, if required to do so by the Court, Plaintiffs' Counsel will separately petition the Court for an award of the foregoing attorneys' fees and costs ("Motion for Fees"). Defendants will not oppose Plaintiffs' Motion for Fees. The Settlement shall not be contingent upon any particular amount of attorneys' fees or costs being approved and awarded by the Court. All amounts approved by the Court for attorneys' fees and costs will be paid to Plaintiffs' Counsel and will be reported on an IRS Form 1099.

c. **Settlement Administrator.** Plaintiffs' Counsel will be responsible for engaging the Settlement Administrator (within 7 days after this Settlement Agreement is fully executed) and paying the reasonable costs of settlement administration, including any Settlement Administrator's fees and expenses. The Parties have agreed on Phoenix as the Settlement Administrator. Counsel for all Parties will be copied on all substantive communication with the Settlement Administrator about the Settlement, except for communication containing sensitive personal or financial information.

d. **Service Payments.** Defendants shall pay Named Plaintiffs Jody Gudger and Rhonda King a service payment of $10,000.00 each ($20,000.00 total for both Named Plaintiffs) from the Total Settlement Amount, which payments shall be subject to Court approval. The Settlement shall not be contingent upon any particular amount of Named Plaintiff service payments being approved and awarded by the Court. All amounts approved by the Court as service payments to

3

the Named Plaintiffs will be paid to the Named Plaintiffs and will be reported on an IRS Form 1099.

e.   **Timing of Payment.**  If the Settlement is granted final approval by the Court, it will become effective when either the appeal period expires with no appeal having been filed, or when any appeal is terminated (the "Settlement Effective Date"). Within 14 days after the Settlement Effective Date, Defendants shall deposit the Total Settlement Amount, plus the amount calculated by the Settlement Administrator for the employer's portion of payroll taxes, into a qualified settlement fund established by the Settlement Administrator.  Within 14 days after the settlement is funded, the Settlement Administrator shall process all settlement awards and prepare and distribute all payments from the Settlement.   These timelines are contingent upon the Settlement Administrator providing the total funding amount (including payroll taxes), wiring instructions, and a W-9 form to Defendants within 14 days after the Final Approval Order.

f.   **Additional Payments.**  Defendants shall be separately responsible for payment of the employer's share of any payroll taxes associated with the Opt-In Plaintiffs' Individual Settlement Payments.  Defendants shall also separately pay the full cost of the settlement mediation conference held on July 30, 2019.

g.   **No Effect on Other Benefits.**  The Parties agree that settlement payments under this Settlement shall not be considered compensation or hours of service or otherwise affect the calculation of benefits or eligibility under any employee benefit plans sponsored by Defendants or the Released Parties, including but not limited to vacation pay, holiday pay, pension, or retirement plan contributions.

h.   **Cy Pres.**  Settlement checks will remain valid for 90 days after the date of mailing ("Check-Cashing Period").   The Settlement Administrator will perform skip-tracing or other reasonable methods to locate Opt-In Plaintiffs if their checks are returned.   After 90 days, the Settlement Administrator will notify the Parties' counsel as to the checks that remain uncashed, and will do so upon request thereafter.  The Settlement Administrator will reissue checks upon request if new contact information is located.  If for any other reason there is a residual amount of the Settlement Common Fund remaining six months after the Check-Cashing Period, that amount will be donated to The Florida Bar Foundation.  Any failure of an Opt-In Plaintiff to cash or deposit a settlement check shall not affect the enforceability of the release.  Any costs associated with administering the residual (*e.g.,* bank stop pay charges) will be deducted from the residual before donation to the beneficiary.

4.   **Opt-In Data.**  Within 14 days after full execution of this Settlement Agreement, Defendants shall provide to the Settlement Administrator the following Opt-In Data on a confidential basis: each Opt-In Plaintiff's name, last known address, social security number, and telephone number (if available).

4

a. **Address Updates.** The Settlement Administrator will update the Opt-In Plaintiffs' addresses using the National Change of Address database or other available resources deemed suitable by the Settlement Administrator, and, to the extent this process yields an updated address, that updated address shall replace the last known address for purposes of this Settlement Agreement.

b. **Information Security.** The Settlement Administrator shall: (i) provide reasonable and appropriate administrative, physical, and technical safeguards for any personally identifiable information ("PII") that it receives from Defendants; (ii) not disclose the PII to Plaintiffs' Counsel, Named Plaintiffs, any party or third parties, including agents or subcontractors, without Defendants' consent and keep PII confidential; (iii) not disclose or otherwise use the PII other than to carry out its duties as set forth herein; and (iv) promptly provide Defendants with notice if PII is subject to unauthorized access, use, disclosure, modification, or destruction.

5.   **Finalizing Notice and Allocations.** Within 14 days after full execution of this Settlement Agreement, Plaintiffs' Counsel will provide Defendants' Counsel with a draft of the Notice of Settlement and the Individual Settlement Payment allocations ("Allocations") to review and discuss any changes prior to finalizing them. Defendants' Counsel will have at least 7 days for its review before Plaintiffs' Counsel provides the final Notice of Settlement and Allocations to the Settlement Administrator.

6.   **Notice of Settlement.** Within 14 days after the Settlement Administrator receives the Opt-In Data and the final Notice of Settlement and Allocations, the Settlement Administrator shall send the Notice of Settlement to the Opt-In Plaintiffs by first-class mail. The Settlement Administrator will perform skip-tracing or other reasonable methods to locate Opt-In Plaintiffs if their Notices are returned. The Notice of Settlement will describe the nature of the Lawsuit and the Settlement, including the amount of each Individual Settlement Payment.

a. **Process for Objections.** Opt-In Plaintiffs will have 45 days from the date the Notice of Settlement is mailed to object to the Settlement as instructed in the Notice of Settlement ("Objection Deadline"). Any objection must be made in a written, signed statement providing the Opt-In Plaintiff's full name, address, and telephone number, stating the grounds for the objection with particularity, and attaching any supporting documentation. All objections must be sent to the Settlement Administrator no later than the deadline set forth in the Notice of Settlement. Any Opt-In Plaintiff who fails to comply with these requirements will be deemed to have waived any right to object to or appeal the Settlement and Final Approval Order. Upon receipt, the Settlement Administrator will send copies of all objections to the Parties' Counsel.

b. **Effect of Objection.** Any objectors will remain part of the Settlement for all purposes under this Settlement Agreement and the Final Approval Order, as all Opt-In Plaintiffs delegated authority to the Named Plaintiffs to make decisions

regarding settlement, but all objections will be submitted to the Court for consideration with the Parties' Motion.

    c.   **Obligations of Parties and Counsel**. The Parties, their Counsel, and persons on their behalf shall not seek to solicit or otherwise encourage anyone to object to the Settlement Agreement or appeal from any order of the Court that is consistent with the terms of this Settlement Agreement, or discourage participation in the Settlement.

    d.   **Obligations of Settlement Administrator**. Upon receipt, the Settlement Administrator will send copies of all objections to the Parties' Counsel. The Settlement Administrator will provide a Declaration of due diligence, proof of mailing of the Notice of Settlement, and a complete record of all objections to the Parties' Counsel within 14 days after the Objection Deadline.

7.   **Court Approval.** The parties' Settlement of this Lawsuit is contingent on final approval of the Settlement by the Court. The Settlement will become final and effective only when the Court enters an order granting final approval of the Settlement ("Final Approval Order"). Once the Notice of Settlement has been sent to the Opt-In Plaintiffs and they have had an opportunity to make any objections, the Parties shall jointly recommend to the Court that it approve the terms of this Settlement Agreement by filing a joint Motion with the Court seeking final approval of the Settlement ("Motion") in accordance with *Lynn's Food Stores, Inc. v. United States, US Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

    a.   **Cooperation**. The Parties shall undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement. The Parties agree to cooperate in negotiating (a) the allocation of the Individual Settlement Payments, (b) the form of the Notice of Settlement to be provided to Opt-In Plaintiffs, (c) the manner in which the Notice of Settlement is to be provided to Opt-In Plaintiffs, (d) proposed deadlines for the settlement approval process, and (e) the settlement approval Motion and associated documents to be filed with the Court.

    b.   **Process and Timeline**. The first draft of the joint Motion, Motion for Fees (if required), proposed Order, and Notice of Settlement will be prepared by Plaintiffs' Counsel. Plaintiffs' Counsel will draft the Motion and other filings in time to provide Defendants' Counsel with at least seven days to review and discuss any changes prior to filing. Plaintiffs' Counsel will be responsible for filing the Motion, along with the Settlement Administrator's Declaration and any objections received, in compliance with any applicable Court order or rules.

    c.   **Final Approval Order**. The Motion shall seek a Final Approval Order that: (i) finally approves the Settlement Agreement as fair, adequate, and reasonable, and directs consummation of its terms and provisions; (ii) approves Plaintiffs'

Counsel's application for an award of attorneys' fees and costs; and (iii) dismisses this Lawsuit on the merits and with prejudice and permanently bars all Opt-In Plaintiffs from prosecuting against the Released Parties any individual or class claims that are released by this Settlement Agreement.

8.   **Dismissal of Claims.**  Upon entry of the Court's Final Approval Order, all Opt-In Plaintiffs (including Opt-In Plaintiffs who object to the Settlement) will have their claims in the Lawsuit dismissed with prejudice.

9.   **Scope and Effect of the Release.**  In consideration for Defendants' payment of the Total Settlement Amount as set forth in this Settlement Agreement, the Opt-In Plaintiffs shall fully, finally, and forever release, settle, compromise, relinquish, and discharge any and all of the Released Parties from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, equitable relief, losses, fines, liens, interest, restitution, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Lawsuit or arise out of the same nucleus of operative facts (consistent with the doctrine of res judicata) through the date that this Settlement Agreement is fully executed.  The claims released by the Opt-In Plaintiffs (including any Opt-In Plaintiffs who object to the Settlement or fail to cash their Individual Settlement Payments) include any claims under the federal Fair Labor Standards Act for backpay, liquidated damages, penalties, equitable relief, interest, and attorneys' fees and costs.  The Opt-In Plaintiffs likewise covenant not to sue the Released Parties with respect to any of the claims the Opt-In Plaintiffs have released.

The Released Parties shall include (i) Defendants, and any of their parents, subsidiaries, affiliates, insurers, insurance policies, and benefit plans; (ii) each of the past and present officers, directors, agents, employees, equity holders (shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries, and attorneys of the entities and plans described in this paragraph; and (iii) the predecessors, successors, transferees, and assigns of each of the persons and entities described in this paragraph.

9.   **Communications Regarding Settlement.**  Unless otherwise required by law, neither Named Plaintiffs nor Plaintiffs' Counsel shall make any public comment, communication to media, any form of advertising or public announcement (including through social media) regarding the Lawsuit or the Settlement.  In response to inquiries, Plaintiffs' Counsel may state that the case has been resolved, and may disclose any facts or terms that are part of the public record.

10.  **Termination of Settlement Agreement.**  Failure of the Court to approve the Settlement Agreement (after reasonable opportunity for the Parties to cure such problems as may initially prevent the Court from granting such approval) will be grounds for the parties to terminate this Settlement Agreement.  A failure of the Court to approve the Settlement Agreement shall render the entire Settlement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby.  Each party may exercise its option to void this Settlement as provided in this paragraph by giving notice, in writing, to the other and to the Court within 14 days after the adverse Court order.  In the event that

7

this Settlement Agreement is not approved by the Court, fails to become effective for any reason, or is reversed, withdrawn, or modified by the Court or any other court with jurisdiction over the Lawsuit, the Settlement Agreement shall become null and void *ab initio* and shall have no force or effect; all negotiations, statements, and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the Lawsuit prior to the settlement; and neither this Settlement Agreement nor any ancillary documents, actions, or filings shall be admissible or offered into evidence in the Lawsuit or any other action for any purpose.

11. **Destruction of Information.** Plaintiffs' Counsel hereby confirm that they will destroy and will not use any contact information for non-opt-in plaintiffs that was produced in this Lawsuit because that information was produced solely for purposes of this Lawsuit.

12. **Settlement Disputes.** To the extent that the Parties cannot agree on any additional matters related to the preparation, execution, administration or enforcement of the Settlement not specifically covered herein, including the drafting of the Settlement Agreement or any other documents provided herein, the Parties agree to utilize the Mediator in this matter, Marlene Quintana to resolve the same. The Mediator's determination on any such matters shall be final and binding and not subject to any further review or appeal. The Parties shall bear their own attorneys' fees and expenses in any matter submitted to the Mediator pursuant to this paragraph.

13. **Enforcement Actions.** The Court shall have continuing jurisdiction over the terms and conditions of this Settlement Agreement until all payments and obligations contemplated by the Settlement Agreement have been fully carried out. In the event that one or more of the Parties to this Settlement Agreement institutes any legal actions or proceedings to enforce or implement the provisions of this Settlement Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties' reasonable attorneys' fees and costs, including expert witness fees incurred in connection therewith.

14. **Captions and Interpretations**. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital. The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties facilitated by an experienced employment law mediator and that this Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Settlement Agreement.

15. **Entire Agreement**. This Agreement constitutes the entire and integrated agreement between the Parties with respect to the Settlement of the Lawsuit, and all other prior and contemporaneous agreements, representations, warranties, or understandings of the Parties are superseded and merged into this Settlement Agreement. This Settlement Agreement may not be modified, except in writing and signed by the Parties hereto, and, if changed after the Final Approval Order, approved by the Court.

8

16.    **No Reliance**.   The Parties acknowledge that they have not relied on any promise, representation or warranty, express or implied, not contained in this Agreement.

17.    **Assignments**.   The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

18.    **Named Plaintiff Signatories**.   It is agreed that because the Opt-In Plaintiffs are so numerous, it is impractical to have each Opt-In Plaintiff execute this Settlement Agreement.  The Notice of Settlement will advise all Opt-In Plaintiffs of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Opt-In Plaintiff.

19.    **Execution in Counterparts**.  This Settlement Agreement may be signed in one or more counterparts, including by copies transmitted via facsimile or electronic delivery.  Upon a party's execution of a counterpart, that counterpart shall be deemed an original, and all signed counterparts shall together constitute one Settlement Agreement.  A facsimile signature shall have the same force and effect as the original signature, if and only if it is transmitted from counsel for one party to the other.  Such transmissions shall be interpreted as verification by the transmitting counsel that the signature is genuine and that the party signing has authorized and reviewed the agreement.  All executed copies of this Settlement Agreement and copies thereof shall have the same force and effect and shall be as legally binding and enforceable as the original.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Individually And On Behalf Of All Opt-In Plaintiffs,

Dated: 10/22/2019     By: _____
                          Jody Gudger, Plaintiff

Individually And On Behalf Of All Opt-In Plaintiffs,

Dated: _____     By: _____
                                Rhonda King, Plaintiff

Centene Management Company, LLC,

Dated: 10/24/2019     By: _____
                          Its authorized agent, Defendant
                          Raymond K. Kleeman

Sunshine State Health Plan, Inc.,

Dated: 10/23/2019     By: _____
                          Its authorized agent, Defendant

10

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Individually And On Behalf Of All Opt-In Plaintiffs,

Dated: _____   By: _____
                                         Jody Gudger, Plaintiff

Individually And On Behalf Of All Opt-In Plaintiffs,

Dated: _10/29/19_   By: _____
                                         Rhonda King, Plaintiff

Centene Management Company, LLC,

Dated: _____   By: _____
                                         Its authorized agent, Defendant

Sunshine State Health Plan, Inc.,

Dated: _____   By: _____
                                         Its authorized agent, Defendant

APPROVED AS TO FORM:

Plaintiffs' Counsel,

Dated: October 22, 2019          By: *Noah C. Storch, Esq.*

Noah Storch, Esq.
RICHARD CELLER LEGAL, P.A.

Defendant's Counsel,

Dated: 10/29/19          By: *Breanne Martell*

Breanne Sheetz Martell, Esq.
LITTLER MENDELSON, P.C.

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

JODY GUDGER AND RHONDA KING,
on behalf of themselves and those
similarly situated,

       Plaintiffs,                    CASE NO. 2:17-cv-14281-JEM

v.

CENTENE MANAGEMENT
COMPANY, LLC., a Foreign Limited
Liability Company, and SUNSHINE
STATE HEALTH PLAN, INC., a
Florida Profit Corporation.

       Defendants.
_____ /

## DECLARATION OF ELIZABETH KRUCKENBERG

I, ELIZABETH KRUCKENBERG, declare the following to be true and correct, under the penalty of perjury, and if called as a witness would testify competently to the same:

1.    I am over eighteen (18) years of age and authorized to make this declaration on behalf of Phoenix Class Action Administration Solutions ("Phoenix") and myself.

2.    I am employed as the Director of Case Management at Phoenix Class Action Administration Solutions ("Phoenix"), the claims administrator in the above-entitled action. My business address is 1411 N. Batavia St., Suite 105, Orange, CA 92867.  My telephone number is (800) 523-5773.

2.    Phoenix is a class action administration company headquartered in Orange, California.  It was founded by an individual who had managed hundreds of settlements, along with professionals in the areas of software development, third-party claims administration, mail-house operations, and call-center support management

3.      I am the case manager for this settlement. As the case manager for this settlement, I have personal knowledge of the information provided herein, and if called as a witness, I could and would accurately testify thereto.

4.      Phoenix was retained by Plaintiffs' Counsel as the Claims Administrator in this Collective Action and has provided administration services to date, including, (a) printing and mailing the Notice of Pending Collective Action Lawsuit ("Notice") and Consent to Join Form (collectively "Notice Packet"); (b) receiving undeliverable Notice Packets; (c) receiving and validating Consent to Join Forms; and (d) submitting properly executed Consent to Plaintiffs' Counsel.

5.      Additionally, once the Parties reached a settlement in the case, Phoenix was responsible for: (a) printing and mailing the Notice of Collective Action Settlement ("Settlement Notice"); (b) receiving and re-mailing undeliverable Settlement Notices; and (c) receiving and processing any objections to the Settlement.

6.      Should the Court grant approval of the Settlement, Phoenix will also be responsible for: (a) establishing a Qualified Settlement Fund and coordinating funding of the Settlement; (b) mailing settlement checks and tax-reporting materials; (c) calculating and submitting payroll taxes to the taxing authorities for Defendants' and Opt-In Plaintiffs' share of payroll taxes; and (d) answering questions from Opt-In Plaintiffs.

## TOLL-FREE TELEPHONE HELPLINE

7.      A toll-free telephone number was included in the Settlement Notice for the purpose of allowing the Opt-In Plaintiffs to call Phoenix and to make inquiries regarding the Settlement. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process. Callers have the option to speak with a live call center representative during

normal business hours or to leave a message and receive a return call during non-business hours. The toll-free telephone number included in the Settlement Notice is 1-800-523-5773.

## NOTIFICATION OF THE CLASS

8.      On December 11, 2019, counsel for Defendants provided Phoenix with a mailing list ("Opt-In List") which included each Opt-In Plaintiff's full name, most recent mailing addresses and telephone numbers, and Social Security Numbers.

9.      On December 11, 2019, Phoenix received from Plaintiffs' Counsel, the final Settlement Notice prepared by the Parties and the total amount of each Opt-In Plaintiff's settlement payment. The Settlement Notice advised Opt-In Plaintiffs they could postmark objections to the settlement by February 10, 2020.

10.     Prior to mailing, the mailing addresses contained in the Opt-In List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.

11.     On December 26, 2019, Settlement Notices were mailed to the eighty-two (82) Opt-In Plaintiffs in the Opt-In List by First Class mail. Attached hereto as **Exhibit A** is a true and correct copy of the Settlement Notice that was mailed to Opt-In Plaintiffs.

12.     As of this date, two (2) Settlement Notices were returned by the post office. For those without forwarding addresses, Phoenix performed skip traces to locate new mailing addresses. A total of three (3) Settlement Notices were re-mailed, to either a newfound address, with forwarding addresses provided by the United States Postal Service or at the request of the Opt-In Plaintiff, leaving zero (0) Settlement Notices unable to be delivered. The net undeliverable rate is 0.00% among Settlement Notices returned by the post office.

## CLAIMS

13.     Pursuant to the Settlement Notice that was mailed to Opt-In Plaintiffs, Opt-In Plaintiffs did not need to do anything or submit a claim in order to receive a settlement check.

## OBJECTIONS

14.     As of this date, Phoenix has received no objections to the settlement. The deadline to submit an objection was February 20, 2020.

15.     Phoenix's costs in connection with the administration of this Settlement are $6,000.00.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on this 9th    day of April, 2020.


ELIZABETH KRUCKENBERG

EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT PIERCE DIVISION

**JODY GUDGER AND RHONDA KING,**
on behalf of themselves and those
similarly situated,

       **Plaintiffs,**                        **CASE NO. 2:17-cv-14281-JEM**

v.

**CENTENE MANAGEMENT
COMPANY, LLC., a Foreign Limited
Liability Company, and SUNSHINE
STATE HEALTH PLAN, INC., a
Florida Profit Corporation.**

       **Defendants.**

---

## NOTICE TO OPT-IN PLAINTIFFS REGARDING
## SETTLEMENT OF FLSA COLLECTIVE ACTION

*This notice is not a solicitation from a Lawyer.*
*This Notice Relates to the Proposed Settlement of a Collective Action*

## OPT-IN PLAINTIFFS ARE HEREBY NOTIFIED AS FOLLOWS:

A settlement has been reached in the above-referenced collective action lawsuit styled *Jody Gudger and Rhonda King, on behalf of themselves and those similarly situated v. Centene Management Company, LLC and Sunshine State Health Plan, Inc. ("Defendants")*, pending in the Southern District of Florida, Fort Pierce Division (the "Lawsuit"). It is important that you read this Notice carefully.

## PURPOSE OF THIS NOTICE

The purpose of this Notice is to inform all Opt-In Plaintiffs, who previously joined this lawsuit by filing an opt-in consent form that they are eligible to claim a portion of the collective action settlement reached in the Lawsuit (the Settlement").

You are an Opt-In Plaintiffs. Therefore, this Notice is to inform you about the Settlement and to explain your rights and options with respect to the Lawsuit and how to claim your payment under the Settlement. Defendants assure you that you will not be retaliated against in any way for participating in the settlement.

Because of the steps that need to be completed to finalize the settlement, it is anticipated that you will receive your settlement payment in approximately four months, if the Court approves the settlement.

Settlement checks will remain valid for 90 days after the date of mailing ("Check-Cashing Period").

# BASIC INFORMATION

### 1.   What is the purpose of this notice?

You are an Opt-In Plaintiff.  Therefore, this Notice is to inform you about the Settlement and to explain your rights and options with respect to the Lawsuit and how to claim your payment under the Settlement. Defendants assure you that you will not be retaliated against in any way for participating in the settlement. This Notice is to inform you of your rights and options **and the deadlines to exercise them** under the terms of the settlement agreement.

The Court still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

### 2.   What is this lawsuit about?

The Plaintiffs, Jody Gudger and Rhonda King (the "Named Plaintiffs") started a proposed collective action lawsuit against Defendants, Centene Management Company, LLC and Sunshine State Health Plan, Inc., alleging that Defendants violated the applicable wage laws.

In the Lawsuit, the Named Plaintiffs allege that they and the Opt-In Plaintiffs were misclassified by Defendants as "exempt" from overtime compensation under the federal Fair Labor Standards Act ("FLSA") during their employment, which resulted in the non-payment of overtime wages allegedly owed to them, for any hours worked in excess of forty (40) hours per workweek.  Plaintiffs allege that they were "non-exempt," and therefore were entitled to be paid overtime for hours worked over forty (40) per workweek.

Defendants deny the Named Plaintiffs' allegations and maintain that they properly classified and compensated the Opt-In Plaintiffs and that Defendants complied with all applicable state, local and federal wage laws.

The Parties in this action disagree as to the probable outcome of the Lawsuit with respect to liability and damages if it were not settled.  Named Plaintiffs recognize that litigating is a risky proposition, and that they may not have prevailed on their claim(s).  Likewise, while Defendants are confident that they have strong defenses to the Named Plaintiffs' claims, they recognize the risks, distractions, and costs involved with litigation.   The Plaintiffs sought recovery of unpaid overtime, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

The lawsuit is filed in the United States District Court for the Southern District of Florida, Fort Pierce Division, *Case No. 2:17-cv-14281-JEM*.  The lawsuit is known as *Jody Gudger and Rhonda King, v. Centene Management Company, LLC and Sunshine State Health Plan, Inc.*

### 3.   Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. Both sides believe they would have prevailed in the litigation. Instead, both sides agreed to a settlement. This Settlement is the result of good-faith, arm's-length negotiations between the Parties, through their respective attorneys.  Both sides agree that in light of the risks and expense associated with continued litigation, this Settlement is fair and appropriate under the circumstances, and in the best interests of the Plaintiffs and the Opt-In Plaintiffs. That way the parties avoid the cost and risk of continued litigation. The Plaintiffs and their attorneys think the settlement is best for all involved.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 4.   What does the settlement provide?

The terms of the settlement provide for Defendants to pay an "all in" settlement amount of **$385,000.00** ("Total Settlement Amount"), of which **$185,278.56** will be allocated among the Named Plaintiffs and the Opt-In Plaintiffs("Settlement Common Fund").

As part of the mediation and settlement in this matter, the Parties negotiated the amount to be paid to Plaintiffs' Counsel for all attorneys' fees and costs incurred in the Lawsuit separate and apart from the Settlement Common Fund.  The Parties have agreed that Plaintiffs' Counsel shall be paid the amount of **$179,721.44** of the Total Settlement Amount (which includes payment of the Settlement Administrator's costs), subject to Court approval.  Plaintiffs' Counsel is taking no payment from the Settlement Common Fund allocated to the Named Plaintiffs and the Opt-In Plaintiffs and the attorneys' fees and costs are being paid independently based on the time and effort invested by Plaintiffs' Counsel.

The Parties will also ask the Court to approve service payments in addition to the **$185,278.56** Settlement Common Fund in the total amount of **$20,000** to the Named Plaintiffs who brought the lawsuit. These service payments are in recognition of the many hours of service the Named Plaintiffs by, among other things, supplying information and documents, helping the attorneys investigate and prosecute the claims, and participating in mediation on behalf of the Opt-In Plaintiffs.

### 5.   How much will my payment be?

Your settlement share was calculated based on the number of weeks you were employed as an **LTC Case Manager and/or Medical Necessity Specialist** during your individual statute of limitations within the Covered Period of **October 3, 2014 to July 18, 2016** (for LTC Case Managers) **or October 3, 2014 to February 26, 2017** (for Medical Necessity Specialists), as well as your pay rate.

The parties agreed that each ineligible Opt-In Plaintiff would receive a minimum amount of $250.

Based on the formula in the settlement agreement, you will be entitled to receive approximately $_____.  You will receive two settlement checks consisting of the following: (a) one half (50%) of each Individual Settlement Payment will be paid and reported as wages for tax purposes, minus appropriate withholdings, with the Opt-In Plaintiff receiving an IRS Form W-2; and (b) the other half (50%) of each Individual Settlement Payment will be treated as a settlement of Plaintiffs' claim for liquidated damages, exemplary damages, and interest, and will be paid and reported on an IRS Form 1099.

## HOW YOU GET A PAYMENT

### 6.   How can I get my payment?

You need not do anything further at this time.  You will receive settlement checks if/when the Court approves the settlement.

### 7.   When will I get my settlement payment?

If the Court approves the settlement, then your payment will be mailed to you unless there is an appeal.

### 8.   What is the effect of getting a settlement payment?

In exchange for Defendants' payment of the Total Settlement Amount, the Opt-In Plaintiffs will fully, finally, and forever release, settle, compromise, relinquish, and discharge any and all of the Released Parties from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, equitable relief, losses, fines, liens, interest, restitution, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Lawsuit or arise out of the same nucleus of

3

operative facts (consistent with the doctrine of res judicata) through October 30, 2019. The claims released by the Opt-In Plaintiffs (including any Opt-In Plaintiffs who object to the Settlement or fail to cash their Individual Settlement Payments) include any claims under the federal Fair Labor Standards Act for back pay, liquidated damages, penalties, equitable relief, interest, and attorneys' fees and costs. The Opt-In Plaintiffs likewise covenant not to sue the Released Parties with respect to any of the claims the Opt-In Plaintiffs have released.

The Released Parties include (i) Defendants, and any of their parents, subsidiaries, affiliates, insurers, insurance policies, and benefit plans; (ii) each of the past and present officers, directors, agents, employees, equity holders (shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries, and attorneys of the entities and plans described in this paragraph; and (iii) the predecessors, successors, transferees, and assigns of each of the persons and entities described in this paragraph.

## OBJECTING TO THE SETTLEMENT

### 9. How do I object to the settlement?

Opt-In Plaintiffs have the option to object to the settlement or some part of it by **February 10, 2020**. ("Objection Deadline"). Any objection must be made in a written, signed statement providing the Opt-In Plaintiff's full name, address, and telephone number, stating the grounds for the objection with particularity, and attaching any supporting documentation. All objections must be sent to the Settlement Claims Administrator no later than February 10, 2020. All objections will be considered by the Court. If the Court approves the settlement, all Opt-In Plaintiffs, including any who submitted objections, will remain part of the settlement. Any Opt-In Plaintiff who fails to comply with these requirements will be deemed to have waived any right to object to or appeal the Settlement and Final Approval Order. Upon receipt, the Settlement Class Administrator will send copies of all objections to the Parties' Counsel.

**PHOENIX CLASS ACTION ADMINISTRATION SOLUTIONS**
**P.O. Box 7208**
**Orange, CA 92863**
**Telephone: 800-523-5773**
**Fax: 949-209-2503**
**Email: Notice@phoenixclassaction.com**

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

Yes. When you submitted your opt-in consent form, you agreed to have the lawyers at the law firm of Richard Celler Legal, P.A. represent you. More information about the law firm, their practices, and their lawyers' experience are available at: www.floridaovertimelawyer.com

### 11. How will the lawyers be paid?

As part of the mediation and settlement in this matter, the Parties negotiated the amount to be paid to Plaintiffs' Counsel for all attorneys' fees and costs incurred in the Lawsuit separate and apart from the Settlement Common Fund. The Parties have agreed that Plaintiffs' Counsel shall be paid the amount of **$179,721.44** of the Total Settlement Amount, subject to Court approval. Plaintiffs' Counsel is taking no payment from the Settlement Common Fund allocated to the Named Plaintiffs and the Opt-In Plaintiffs and the attorneys' fees and costs are being paid independently based on the time and effort invested by Plaintiffs' Counsel.

# GETTING MORE INFORMATION

**12. Are there more details about the settlement?**

You can obtain more information about the settlement or obtain a copy of the settlement agreement by contacting Plaintiffs' Counsel at:

**NOAH E. STORCH, ESQ.**
**RICHARD CELLER LEGAL, P.A.**
**10368 W. State Road 84, Suite 103, Davie, FL 33324**
**Email: noah@floridaovertimelawyer.com**
**Telephone: (866) 344-9243(WAGE) OR (954) 903-7475**

DATED:        December 26, 2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

| | | |
|---|---|---|
| JODY GUDGER AND RHONDA KING, on behalf of themselves and those similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | 2:17-cv-14281-JEM |
| | ) | |
| CENTENE MANAGEMENT COMPANY, LLC, a Foreign Limited Liability Company, and SUNSHINE STATE HEALTH PLAN, INC., Florida Profit Corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) ) | |

**FINAL ORDER AND JUDGMENT**
**GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT**

This matter is before the Court on the parties' Joint Motion and Brief in Support of Approval of Settlement.  Having considered the arguments of counsel, all applicable law, and any objections properly made to the settlement, and based upon the memoranda, exhibits, and all the files and proceedings herein, the Court **ORDERS** as follows:

1.      This Final Order and Judgment adopts and incorporates the parties' Settlement Agreement, the terms defined therein, and all exhibits thereto.

2.      The parties' Joint Motion and Brief in Support of Approval of Settlement is **GRANTED**.

3.      The parties' Settlement Agreement is **APPROVED** as a fair and reasonable resolution of a *bona fide* dispute over wages allegedly owed under the Fair Labor Standards Act.

The Court approves the service payments to Named Plaintiffs Gudger and King, the attorneys' fees and costs, and all other terms of the parties' Settlement Agreement.

4.       In their consent to join forms filed with this Court, each of the Opt-In Plaintiffs designated Plaintiffs' counsel to represent them and also designated Named Plaintiffs to make decisions for them regarding all matters concerning the litigation, including negotiating a resolution of their claims.  Additionally, a settlement administrator mailed notice of the Settlement to each Opt-In Plaintiff to inform them of the Settlement terms, and each Opt-In Plaintiff had an opportunity to object to the Settlement within 45 days.  No Opt-In Plaintiff objected to the Settlement.

5.       The Court directs the parties and their counsel to implement and consummate the Settlement Agreement in accordance with its terms and provisions.  The parties are hereby authorized, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement and all exhibits thereto as (i) are consistent in all material respects with this Final Order and Judgment, and (ii) do not limit the rights of the Opt-In Plaintiffs.

6.       The Settlement Agreement is binding on all Opt-In Plaintiffs, as defined in the parties' Settlement Agreement and listed in Exhibit A to the Agreement.  The Court adjudges that the Opt-In Plaintiffs have fully, finally, and conclusively compromised, settled, discharged, dismissed, and released any and all Released Claims against Defendants and the Released Parties, as provided in Paragraph 9 of the Settlement Agreement.  The Opt-In Plaintiffs shall be and are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating as a plaintiff, claimant, opt-in, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding, including any class or collective action proceeding, in

2

any jurisdiction based on any and all of the Released Claims under the terms of the Settlement Agreement.

7.      Neither this Final Order and Judgment nor any aspect of this Settlement is to be offered as evidence of, or construed or deemed as an admission of, liability, culpability, negligence, or wrongdoing on the part of Defendants or their employees or agents.

8.      This case, including all individual and collective claims presented thereby, is hereby **DISMISSED WITH PREJUDICE**, with each party to bear their own fees and costs, except as set forth in the Settlement Agreement.

9.      The Court hereby enters Judgment approving the terms of the Settlement.  This Order shall constitute a final judgment for purposes of Fed. R. Civ. P. 58.

10.     Without affecting the finality of this Final Order and Judgment for purposes of appeal, this Court shall retain exclusive jurisdiction with respect to the implementation and enforcement of the Settlement Agreement.

11.     The Clerk is directed to remove all dates from the Court's calendar.

ORDERED in Chambers at Miami, Florida, this ___ day of _____, 2020.


_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE